## AMERICAN LITTORAL SOCIETY v CITY OF BOCA RATON, et. al. and CORAL REEF SOCIETY, INC. v. CITY OF BOCA RATON, et al.

Case No. 88-1590

State of Florida, Division of Administrative Hearings

May 3, 1988

### APPEARANCES OF COUNSEL

**Alfred J. Malefatto, David Asburn,** for the City of Boca Raton.

**Karen Brodeen,** for the Department of Environmental Regulation.

**Alan J. Kan, Jonathan L. Shepard,** for American Littoral Society, Sierra Club, and Coral Reef Society.

### OPINION OF THE COURT

WILLIAM R. DORSEY, JR., Hearing Officer.

### RECOMMENDED ORDER

This matter was heard by William R. Dorsey, Jr., the Hearing

Officer designated by the Division of Administrative Hearings, in Boca Raton, Florida, on April 27, 1988. This matter was referred to the Division of Administrative Hearings on April 5, 1988. All parties agreed that a prompt hearing on the petition was required. All parties filed proposed findings of fact and conclusions of law by the commencement of the hearing. Rulings on proposed findings of fact are made in the appendix to this Recommended Order. During the hearing, ten exhibits offered by the City of Boca Raton were admitted into evidence and testimony was received from Richard H. Spadoni, P.E.; Richard Wolf; Earl Possardt; Janet Llewellyn; and Kenneth G. Echternacht, P.E., Ph.D. Seven exhibits were admitted in evidence for the petitioners, and George H. Dalrymple, Ph.D., Harold Wanless, Ph.D., and Fredrick Cichocki, Ph.D., testified for petitioners.

## ISSUE

The issue is whether the Department of Environmental Regulation (DER) should modify permit number 599090329, issued to the City of Boca Raton (City), to allow construction of an approved beach restoration project to commence on May 1, 1988, rather than on June 1, 1988.

## FINDINGS OF FACT

1. On November 21, 1986, DER issued permit number 599070329 to the City for a beach restoration project. Issuance of the permit followed resolution of a dispute between DER and the City of Boca Raton which was the subject of an earlier proceeding before this hearing officer. See City of Boca Raton, et al. v Florida Department of Environmental Regulation, et al., DOAH Case Number 86.0991 (Final Order of Dismissal rendered November 21, 1986). Although the City maintained in this case that the Coral Reef Society and Sierra Club, who are petitioners here, were intervenors in that prior proceeding through an umbrella organization, Save and Protect our Aquatic Resources and Environment (SPARE), no evidence was adduced supporting that contention. In the 1986 proceeding SPARE alleged that it was "a coalition of various environmental and commercial group with a common interest in the protection of Florida's unique and fragile aquatic resources" (Amended Petition for Leave to Intervene in Case 86-0991, filed September 2, 1986). The groups which made up the coalition were not identified in that prior proceeding or in this one. SPARE filed a voluntary dismissal in the prior proceeding after learning that DER had decided to support issuance of a permit to the City of Boca Raton. After further administrative proceedings at the federal level, the U.S. Army Corps of Engineers issued a permit to the

172

City of Boca Raton for the beach restoration project on or about January 28, 1988.

2. The project, as currently permitted, involves the placement of approximately 980,000 cubic yards of sand, dredged from offshore, onto 1.45 miles of the City of Boca Raton's beachfront. The project will be constructed within and adjacent to two city parks, Spanish River Park and Red Reef Park, and the waters of the Atlantic Ocean.

3. The mean grain size of the dredged sand to be added to the beach is .32 millimeters. The dredged material is 99.6% sand and .4% silt or clay. The sand to be pumped onto the beach has characteristics almost identical to the current beach sand.

4. As part of the approval process, the City of Boca Raton received a variance from turbidity standards otherwise applicable to Florida Class 3 waters. Turbidity is, to some extent, an unavoidable by-product of beach renourishment dredging. DER approved a mixing zone of 10,000 feet by 1,000 feet in which state water quality standards for turbidity could be violated during the construction period. The City of Boca Raton has also constructed artificial reefs comprised of natural limestone boulders and a protective groin approximately one-half mile south of the project area.

5. Specific Condition Number Three (3) of the DER permit restricts project construction to the months of June, July, and August. In a letter dated February 12, 1988, the United States Fish & Wildlife Service (the Service) requested that the City of Boca Raton seek a modification of its DER permit to allow construction of the project to begin on May 1, 1988. The Service maintained the modification was important to avoid conflict with the peak nesting season of sea turtles, which are protected species.

6. The Service did not make its request to the City to advance the project start date until February 12, 1988, because the Service was under the impression that the City had already requested permission from DER to commence construction sooner. In May of 1987, the City of Boca Raton had requested that the three month construction restriction of Specific Condition Number Three be deleted completely from the permit. When this request was made, the City of Boca Raton had hoped to begin construction during the sea turtle nesting season. DER's hydrographic engineer, Dr. Kenneth Echternacht, opposed this initial request to delete the construction limitation period. Due to delays in the federal permitting process and other logistical problems, the City of Boca Raton withdrew this earlier modification request. In order to meet the concerns of the Service, the City of Boca Raton

**173**

applied by letter to DER dated February 22, 1988 for the suggested permit modification. Upon review of additional climatological and wave height data and littoral drift calculations by Dr. Robert Dean of the Coastal and Oceanographic Engineering Department of the University of Florida College of Engineering, Dr. Echternacht supported a permit modification which would allow the construction period to begin in March, 1988. DER indicated its intention to grant the modification on March 10, 1988, acknowledging the concern of the Service and finding "the proposed modification is not expected to result in any adverse environmental impact or water quality degradation . . ."

7. American Littoral Society, South Florida Chapter, and the Sierra Club, Florida Chapter, jointly, and the Coral Reef Society, independently, filed virtually identical petitions on March 22, 1988, objecting to DER's proposed approval of the modification request, and each requested a formal administrative proceeding. Those petitions not only questioned the permit modification, but also sought to reopen the issue whether the beach restoration project should be undertaken at all. During a telephone conference hearing on the City of Boca Raton's motion to strike portions of the petitions, held on April 8, 1988, the issue in this proceeding was narrowed to whether DER's proposed approval of the modification, expanding the construction "window" by one month, was proper. The time for objecting to the entire project has passed and the permit modification proceeding cannot be used to reopen the issue whether the beach renourishment now permitted for June, July, and August may go forward.

8. The purpose of the restriction of construction to June, July, and August in Specific Condition Number Three of the permit was to confine construction to the months of minimum wave height. In southeast Florida, the summer months are climatologically the months of minimum average wave height. The amount of sand transported by the coastal littoral system, and consequently, the amount of optical turbidity due to suspension of particulate matter in the water column such as fine sand, is a function of wave height and long shore currents. The lesser the wave height and calmer the sea, the less sand is resuspended and the lower are the turbidity levels. During the months of June, July, and August, the wave propagate from the southeast and the corresponding long shore littoral direction is predominantly to the north. The remainder of the year, the littoral drift is primarily to the south. DER determined that project construction during the period of predominantly northerly littoral transport would better protect Red Reef Rock, a large rock outcropping located to the south of the project area. The Red Reef Rock area supports rich and diverse fish resources

174

as fish are attracted to the rock for feeding and take advantage of the relief the rock outcroppings provide. The City of Boca Raton agreed to construct a groin composed of limestone boulders in order to afford additional protection to Red Reef Rock against the drift of sand to the south. The City is also limited by Specific Condition Number Ten of the permit, which remains in effect, and restricts disposal of material in the southernmost .15 mile portion of the beach to times when the prevailing long shore current is from south to north. Nonetheless, construction during May increases the possibility that some material suspended in the water column as the result of the renourishment will be transported over the Red Reef Rock area.

9. Although project construction during the months of June, July, and August presents the optimum conditions from a water quality perspective, construction during that period conflicts with the heights of the sea turtle nesting season. The City of Boca Raton has been monitoring sea turtle nesting activity on the Boca Raton public beaches from Spanish River Boulevard to Palmetto Park Road, a distance of 2.6 miles which encompasses the project area, for the past 11 years. Three species of sea turtles, loggerhead, green, and leatherback turtles have been known to nest on the beaches of Boca Raton within and adjacent to the project area. All three species are protected under state and federal law. Loggerhead sea turtles, by far the most numerous nesters on Boca Raton's beaches, are classified as a threatened species by the U. S. Department of Commerce. Green sea turtles and leatherback sea turtles are classified as endangered species. Compared to the number of nests historically established by loggerhead turtles, green sea turtles are infrequent nesters on Boca Raton's beaches. Leatherback turtles are very rare nesters in this area. Southeast Florida is not a significant nesting habitat for leatherbacks. During the eleven-year monitoring period an average of only 2.4 leatherback sea turtles nested on the beach each year, the largest number nesting in a single year was 7; an average of 8 to 9 green sea turtles have been recorded annually in this area. By way of comparison, during the same period an average of 333 loggerhead sea turtles nested in this area.

10. Sea turtles nesting in Boca Raton has historically occurred from April through September. The earliest nest of the year recorded by the City of Boca Raton occurred on April 2, 1987, and was a leatherback. The latest nest of the year occurred on September 13, 1983, and was a loggerhead. Leatherbacks nest early, and green turtles are late to nest. Loggerhead nests commonly begin in May, with the peak nesting period occurring in late June or early July. In light of the facts set out above concerning the likely timing of sea turtle nesting, while also

**175**

being cognizant of DER's water quality concerns, the Service requested the City of Boca Raton to seek a modification of its DER permit to allow construction to begin on May 1, 1988. This would enable to the City of Boca Raton to avoid construction during the peak of the sea turtle nesting season in late June, July, and August. The construction should take about 30 days.

11. In addition to the permit modification request, the Service has recommended several other "reasonable and prudent measures" to avoid possible adverse effects to sea turtles nesting activity during the renourishment of the beach. These include a) tilling the beach to soften the new sand if it becomes compacted over a certain degree, b) relocation of nests is undertaken only by trained persons, c) lighting on the dredge is minimized to reduce any confusion it could cause to turtles attempting to locate the beach for nesting, and d) the addition of dune plants to the project area. The City of Boca Raton has agreed to implement these measures.

12. The Boca Raton beach restoration project will enhance sea turtle nesting activity in the future. Currently, the beach in the project area is critically eroded, posing an immediate threat to successful sea turtle nesting. Nests are at risk of being inundated by sea water or washed away if not found and relocated by City of Boca Raton staff. The project will provide a long-term benefit to sea turtles by providing a wider dry beach area for safer nesting and better nest site selection.

13. The City proved that wave heights, littoral drift, and other climatological conditions in southeast Florida do not vary dramatically, on the average, between the months of May and June. May is a transitional month, and there is net littoral movement south due to cold fronts and northeast winds in the area, along with swells caused by storms out in the Atlantic Ocean. While there is a potential for isolated events in May which could have an adverse impact on Red Reed Rock by causing a shift of newly dredged material south over the reed, the evidence presented by petitioners did not persuade the hearing officer that the risk of such events was unacceptably large when balanced against the value of advancing the construction into May to minimize conflict with the peak nesting season of loggerhead sea turtles. The petitioners' evidence did not quantify the likelihood of storm-related events with enough energy to adversely affect the Red Reef Rock area. The hearing officer is, therefore, more persuaded by Dr. Echternacht's testimony that long-term (*i.e.,* average) data is more useful when assessing safety margins, and the available data gives reasonable assurance that renourishment may take place in May.

176

Consequently, construction commencing during the month of May would not present any adverse water quality or marine resource effects.

14. Petitioners have not persuaded the hearing officer that the subject permit modification would adversely affect water quality to such an extent as to be contrary to the public interest. The City has obtained a permit for a mixing zone which will accommodate all the turbidity which is likely to be caused by the beach renourishment. There is insufficient evidence that climatological event in May are likely to cause the turbidity to extend beyond the approved mixing zone.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearing has jurisdiction of the subject matter of, and the parties, to this proceeding pursuant to Section 120.57(1), *Florida Statutes* (1987).

2. The DER permit for the subject beach restoration project was issued to the City of Boca Raton pursuant to Section 403.918, *Florida Statutes* (1985), and Rule 17-12.070, *Florida Administrative Code.* Modifications or amendments to the permit and governed by the same statute and rule.

3. Section 403.918, *Florida Statutes,* provides in pertinent part:

(1) A permit may not be issued under Sections 403.91-403.929 unless the applicant provides the department with reasonable assurance that water quality standards will not be violated.

\* \* \*

(2) A permit may not be issued under Sections 403.91-403.929 unless the applicant provides the department with reasonable assurance that the project is not contrary to the public interest. However, for a project which significantly degrades or is within an Outstanding Florida Water, as provided by department rule, the applicant must provide reasonable assurance that the project will be clearly in the public interest.

(a) In determining whether a project is not contrary to the public interest, or is clearly in the public interest, the department shall consider and balance the following criteria:

1. Whether the project will adversely affect the public health, safety or welfare or the property of others;

2. Whether the project will adversely affect the conservation of fish and wildlife, including endangered or threatened species, or their habitats;

**177**

3. Whether the project will adversely affect navigation or the flow of water or cause harmful erosion or shoaling;

4. Whether the project will adversely affect the fishing or recreational values or marine productivity in the vicinity of the project;

5. Whether the project will be of a temporary or permanent nature;

6. Whether the project will adversely affect or will enhance significant historical and archeological resources under the provisions of Section 267.061; and

7. The current conditions and relative value of functions being performed by areas affected by the proposed activity.

4. The subject beach restoration project will be conducted in waters of the Atlantic Ocean adjacent to the City of Boca Raton in southern Palm Beach County. These waters are not classified as Outstanding Florida Waters. *See generally,* Rule 17-3.041, *Florida Administrative Code,* which lists those waters designated by DER as Outstanding Florida Waters. The applicable public interest standard in this proceeding, as prescribed in Section 403.918, is the "not contrary to the public interest" standard, not the more onerous, "clearly in the public interest" standard.

5. The City of Boca Raton has provided adequate reasonable assurance that the permit modification will not have any adverse affects of the type enumerated in Section 403.918(2)(a), *Florida Statutes* (1987). The City of Boca Raton has provided adequate reasonable assurance that the requested one month advance in project construction time will not result in violation of state water quality standards given the variance granted for the 10,000 feet by 1,000 foot mixing zone. The City of Boca Raton has demonstrated that the modification will benefit the sea turtle nesting activities, and thereby conserve threatened and endangered species of sea turtles. *See,* Section 403.918(2)(a)2, *Florida Statutes.* The City of Boca Raton has shown that the subject permit modification is not contrary to the public interest and should be granted.

## RECOMMENDATION

It is recommended that the Department of Environmental Regulation enter a final order granting the permit modification.

DONE AND ENTERED in Tallahassee, Leon County, Florida, this 3rd day of May, 1988.